UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

C.H. ROBINSON WORLDWIDE, INC.,           )
                                                    Plaintiff,    )   CASE NO. C06-5581RBL
                                                           )   PRELIMINARY INJUNCTION ORDER
    v.                                                      )
DARIN THORP,                                      )
                                                Defendant.    )

## I.    STATEMENT OF FACTS

### A.    The Business of C.H. Robinson

C.H. Robinson, founded in 1905, is a publicly traded company on the NASDAQ and is one of the largest logistics company in North America that brokers worldwide shipments for companies through truck, air, ocean and rail. *See* Affidavit of Timothy P. Manning at ¶ 5 ("Manning Aff'd."). C.H. Robinson has approximately 5,776 employees with more than 196 offices worldwide. In 2005, it arranged for approximately 4.4 million shipments for over 20,000 customers. A key component of C.H. Robinson's business success is the strong relationships it has developed over the years with its many customers and carriers across the globe. These relationships are particularly critical since C.H. Robinson does not own its own transportation systems but rather acts as a broker to arrange the shipments. *Id.*

(PROPOSED) PRELIMINARY INJUNCTION ORDER
C06-5581RBL      1

DORSEY & WHITNEY LLP
U.S. BANK BUILDING CENTRE
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE: (206) 903-8800
FAX: (206) 903-8820

## B. The Defendant

Defendant Thorp was a C.H. Robinson Transportation Sales Representative, who started his employment on May 2, 2005. *Id.* at ¶¶ 6-7. In that capacity, Thorp was responsible for daily operations involving the sale of C.H. Robinson's services to individual customers and arranging customer shipments with the various third party suppliers that the Company uses in its regular course of business. *Id.* The Company relies on its Transportation Sales Representatives to build upon and enhance existing relationships with customers and seek to establish close relationships on behalf of C.H. Robinson with new customers. *Id.* These relationships and the goodwill and trust that Transportation Sales Representatives establish on behalf of C.H. Robinson are absolutely critical to selling the Company's services effectively. *Id.* C.H. Robinson's Transportation Sales Representatives service customers by brokering and arranging shipments. Very often, the Transportation Sales Representative is the Company employee with whom customers interact almost exclusively and from whom the customer seeks advice. *Id.* The close, trusting working relationships between the Transportation Sales Representatives and customers result in the creation of customers' goodwill toward C.H. Robinson. The information concerning the customers possessed by the Transportation Sales Representatives is of a confidential nature and not generally known or ascertainable by the general public. *Id.*

## C. The Defendant's Failing Performance, Termination and Theft of C.H. Robinson Computer Data

Thorp was terminated on August 31, 2006. *Id.* at ¶ 8. Thorp's termination, however, was not a surprise. On June 26, 2006, Thorp received a Formal Written Performance Warning ("the Warning"). The Warning notified Thorp that his performance numbers were nearly the lowest in the Portland Office of C.H. Robinson, which is physically located in Vancouver, Washington. *See id.* at ¶ 8 and attached Exh. A. The Warning also stated that Thorp had previously been notified in May, 2006, that his performance was not satisfactory. *Id.* The Warning further clarified that if the stated expectations were not met, his employment would be terminated. *Id.*

Thereafter, on August 24, 2006, knowing that he was in imminent threat of losing his job,

(PROPOSED) PRELIMINARY INJUNCTION ORDER
C06-5581RBL                    2

DORSEY & WHITNEY LLP
U.S. BANK BUILDING CENTRE
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE: (206) 903-8800
FAX: (206) 903-8820

Thorp entered the computer network of C.H. Robinson to steal C.H. Robinson customer and carrier information to use at his subsequent jobs. *Id.* at ¶¶ 8-9.[1] This information provides C.H. Robinson with a significant competitive advantage in the transportation brokering marketplace. *Id.* at ¶ 9.  Specifically, Thorp sent to himself at his C.H. Robinson e-mail address a Microsoft Excel spreadsheet containing comprehensive data from 2004, 2005, and 2006 regarding all of C.H. Robinson's customers and carriers for its Portland Office.  He also sent himself several data files containing contact information for carriers.   The stolen customer data consisted of information on each of over one thousand customers serviced by the C.H. Robinson Portland Office, including the revenues and profit margins, recent levels of business with C.H. Robinson, the types of services required by each customer and an analysis of the customer's business over the three year period.  This Microsoft Excel spreadsheet also lists all of the carriers used by the C.H. Robinson Portland Office to service its customers.  This carrier information details the type of service performed by each of the carriers, i.e. whether the carrier provides intermodal, logistics, less than truck load or truck load services, and the amount of revenue paid to and volume of business for each carrier. *Id.*  This type of carrier information has been developed and built up by C.H. Robinson's Portland Office over the past 17 years. *Id.*

Armed with this information, a competitor, such as General Freight[2] or any other transportation broker, could divert customers from C.H. Robinson by undercutting C.H. Robinson's prices and disparaging C.H. Robinson's rates. *Id.*  Likewise, a competitor, such as General Freight or any other transportation broker, could use the carrier information to divert carriers from dealing with C.H. Robinson by overbidding for shipping rates when the transportation market is strong. *Id.*

---

[1]  C.H. Robinson has not attached the at-issue data to this motion, but is prepared to provide it to the court, upon request, for an *in camera* review so as to protect its confidential nature.
[2]  Thorp may have accepted employment at General Freight.  Upon conducting sufficient discovery to verify this fact, C.H. Robinson reserves its right to seek injunctive relief and damages against General Freight for any improper use of C.H. Robinson's confidential information through Thorp.

(PROPOSED) PRELIMINARY INJUNCTION ORDER
C06-5581RBL                                    3

DORSEY & WHITNEY LLP
U.S. BANK BUILDING CENTRE
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE: (206) 903-8800
FAX: (206) 903-8820

### D. C.H. Robinson's Efforts to Protect its Confidential Data.

In addition to password protection, which limits access to the company's computer databases only to authorized employees, C.H. Robinson has several policies in place that are designed to protect the information at issue in this case. *Id.* at ¶ 10. As a condition of employment, on May 2, 2005, Thorp signed a Data Security Agreement acknowledging, among other things, that all customer lists, customer names, and customer records were to be considered the confidential and proprietary records belonging to C.H. Robinson and that such information was not to be stored outside of the office. *See id.* at ¶ 11 and attached Exh. B. Thorp also signed the Company's Electronic Data and Communications Policy. This policy provides, among other things, that "all material or data created or stored" on C.H. Robinson's computer network "are the property of and belong to the Company," that materials on the computer network "may be confidential or proprietary to the Company or its customers or vendors and should be treated as confidential." *See id.* at Exh. C. The Policy also provides that "[t]he Company's Electronic Systems may not be used for personal gain . . . or any illegal or unethical use" and that "[u]nauthorized and illegal uses" of the Company computers includes "providing Company information to a competitor, [and] sending Company information or e-mail to yourself at a personal e-mail address or to a third party for purposes other than as authorized for furthering the legitimate goals of the Company." *Id.* Finally, Thorp also signed an "Employee Agreement," which contained a confidentiality and post-termination non-competition agreement. *Id.* at Exh. D. This Agreement, among other things, obligates Thorp "at any time" not to "use, disclose, copy or assist any other person or firm in the use, disclosure or copying of any" of C.H. Robinson's confidential information that includes, in relevant part, all "customer and carrier lists" and "pricing information." *Id.*

On May 2, 2005, Thorp signed an Employee Certificate of Compliance acknowledging that he had received a copy of the Code of Business Ethics and Conduct and that he understood that he had a "continuing obligation for so long as I remain employed by Company to read, review, and understand each and every new Company policy or any and all amendments or

(PROPOSED) PRELIMINARY INJUNCTION ORDER
C06-5581RBL     4

DORSEY & WHITNEY LLP
U.S. BANK BUILDING CENTRE
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE: (206) 903-8800
FAX: (206) 903-8820

modifications to the Company policies that may become effective during the course of my employment." *Id.* at Exh. F. The Code of Ethics provides, among other things, that business, financial, marketing and service plans associated with products and services, customer lists, business and product plans with outside vendors, pricing strategies and internal data bases are examples of Information Assets that are to be protected. The policy explicitly states that "You many not use any non-public information which you have access to in the course of your work for C.H. Robinson for any personal gain or advantage." *Id.*

## II. ORDER

This matter came before the Court on the order to Show Cause, Docket No. 8. It appears from the record on file that C.H. Robinson's motion was served upon Defendant Darin Thorp ("Thorp") contemporaneously with the filing and service of the complaint.

The Court finds the following facts, each of which are identified in the Affidavit of Timothy P. Manning or Mr. Thorp's own statements at hearing, establish that there is a combination of probable success on the merits of C.H. Robinson's Computer Fraud & Abuse Act claim, Washington Uniform Trade Secrets Act claim and Breach of Contract claims and that a possibility of irreparable harm exists without the issuance of a preliminary injunction:

1. Defendant Thorp was a C.H. Robinson Transportation Sales Representative, who started his employment on May 2, 2005. In that capacity, Thorp was responsible for daily operations involving the sale of C.H. Robinson's services to individual customers and arranging customer shipments with the various third party suppliers that the Company uses in its regular course of business.

2. Thorp's employment with C.H. Robinson was terminated on August 31, 2006.

3. On August 24, 2006, knowing that he was in imminent threat of losing his job, Thorp entered the computer network of C.H. Robinson and misappropriated a copy of C.H. Robinson customer and carrier information and related financial data. This information provides C.H. Robinson with a significant competitive advantage in the transportation brokering marketplace.

(PROPOSED) PRELIMINARY INJUNCTION ORDER
C06-5581RBL                                             5

DORSEY & WHITNEY LLP
U.S. BANK BUILDING CENTRE
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE: (206) 903-8800
FAX: (206) 903-8820

4.     Thorp sent to himself at his C.H. Robinson e-mail address a Microsoft Excel spreadsheet containing comprehensive data from 2004, 2005, and 2006 regarding all of C.H. Robinson's customers and carriers for its Portland Office, which is located in Vancouver, Washington.  He also sent himself several data files containing contact information for carriers.  The stolen customer data consisted of information on each of over one thousand customers serviced by the C.H. Robinson Portland Office, including the revenues and profit margins, recent levels of business with C.H. Robinson, the types of services required by each customer and an analysis of the customer's business over the three year period.  This Microsoft Excel spreadsheet also lists all of the carriers used by the C.H. Robinson Portland Office to service its customers.  This carrier information details the type of service performed by each of the carriers, i.e. whether the carrier provides intermodal, logistics, less than truck load or truck load services, and the amount of revenue paid to and volume of business for each carrier.  This type of carrier information has been developed and built up by C.H. Robinson's Portland Office over the past 17 years.

5.     Armed with this information, a competitor could divert customers from C.H. Robinson by undercutting C.H. Robinson's prices and disparaging C.H. Robinson's rates.  Likewise, a competitor, such as General Freight or any other transportation broker, could use the carrier information to divert carriers from dealing with C.H. Robinson by overbidding for shipping rates when the transportation market is strong.

6.     In addition to password protection, which limits access to the company's computer databases only to authorized employees, C.H. Robinson has several policies in place that are designed to protect the information at issue in this case.  As a condition of employment, on May 2, 2005, Thorp signed a Data Security Agreement acknowledging, among other things, that all customer lists, customer names, and customer records were to be considered the confidential and proprietary records belonging to C.H. Robinson and that such information was not to be stored outside of the office.  Thorp also signed the Company's Electronic Data and Communications Policy.  This policy provides, among other things, that "all material or data

(PROPOSED) PRELIMINARY INJUNCTION ORDER
C06-5581RBL                                      6

**DORSEY & WHITNEY LLP**
U.S. BANK BUILDING CENTRE
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE: (206) 903-8800
FAX: (206) 903-8820

created or stored" on C.H. Robinson's computer network "are the property of and belong to the Company," that materials on the computer network "may be confidential or proprietary to the Company or its customers or vendors and should be treated as confidential."  The Policy also provides that "[t]he Company's Electronic Systems may not be used for personal gain . . . or any illegal or unethical use" and that "[u]nauthorized and illegal uses" of the Company computers includes "providing Company information to a competitor, [and] sending Company information or e-mail to yourself at a personal e-mail address or to a third party for purposes other than as authorized for furthering the legitimate goals of the Company."  Finally, Thorp also signed an "Employee Agreement," which contained a confidentiality and post-termination non-competition agreement.  This Agreement, among other things, obligates Thorp "at any time" not to "use, disclose, copy or assist any other person or firm in the use, disclosure or copying of any" of C.H. Robinson's confidential information that includes, in relevant part, all "customer and carrier lists" and "pricing information."

7.  On May 2, 2005, Thorp signed an Employee Certificate of Compliance acknowledging that he had received a copy of the Code of Business Ethics and Conduct and that he understood that he had a "continuing obligation for so long as I remain employed by Company to read, review, and understand each and every new Company policy or any and all amendments or modifications to the Company policies that may become effective during the course of my employment."  The Code of Ethics provides, among other things, that business, financial, marketing and service plans associated with products and services, customer lists, business and product plans with outside vendors, pricing strategies and internal data bases are examples of Information Assets that are to be protected.  The policy explicitly states that "You many not use any non-public information which you have access to in the course of your work for C.H. Robinson for any personal gain or advantage."

Defendant Thorp admits having accessed the file described in paragraph 8 and 9 of the Miller Declaration, and admits that he sent a copy of that spreadsheet to his C.H. Robinson e-mail account, but denies having retained any such document.

(PROPOSED) PRELIMINARY INJUNCTION ORDER
C06-5581RBL                                         7

DORSEY & WHITNEY LLP
U.S. BANK BUILDING CENTRE
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE: (206) 903-8800
FAX: (206) 903-8820

NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

A. Defendant Thorp is ordered to immediately return to C.H. Robinson (through its counsel) all customer, carrier and revenue data obtained from C.H. Robinson and its computer systems;

B. Defendant Thorp shall not to use or disclose such data in any manner whatsoever;

C. Defendant Thorp shall not solicit or conduct business with C.H. Robinson customers/carriers listed on the misappropriated computer data;

D. Plaintiff shall make available all personal computing devices in his home for inspection and review by an expert hired by CH Robinson, such review to be completed at his home no later than 5:00 p.m. Pacific Time on November 10, 2006. This review shall be at the plaintiff's expense, however, should defendant desire a witness or expert to be present on his behalf, such additional expert shall be at the defendant's own cost.

Entered this 14th day of November, 2006.

RONALD B. LEIGHTON
UNITED STATES DISTICT JUDGE
(Digitally Signed Upon Oral Authorization (JAB))

Presented by:

DORSEY & WHITNEY LLP

s/Michael W. Droke
Michael W. Droke, WSBA#25972
Dorsey & Whitney LLP
U.S. Bank Centre
1420 Fifth Avenue, Suite 3400
Seattle, WA  98101-4010

(PROPOSED) PRELIMINARY INJUNCTION ORDER
C06-5581RBL     8
4812-2903-1937\1

DORSEY & WHITNEY LLP
U.S. BANK BUILDING CENTRE
1420 FIFTH AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101
PHONE: (206) 903-8800
FAX: (206) 903-8820